No. 12-16471

# United States Court of Appeals for the Ninth Circuit

JOHN TROMPETER,

*Plaintiff-Appellee,*

vs.

ALLY FINANCIAL, INC.,

*Defendant-Appellant.*

Appeal from an Order Denying a Motion to Compel Arbitration of the
United States District Court, Northern District of California
No. 4:12-cv-00392 CW

The Honorable Claudia Wilken, District Judge

# Appellant's Reply Brief

JAN T. CHILTON (SBN 47582)
REBECCA S. SAELAO (SBN 222731)
SEVERSON & WERSON
A Professional Corporation
One Embarcadero Center, Suite 2600
San Francisco, California 94111
Telephone: (415) 398-3344
Facsimile: (415) 956-0439

Attorneys for Defendant-Appellant
ALLY FINANCIAL, INC.

# TABLE OF CONTENTS

*Page*

I.    INTRODUCTION ......................................................................................1

II.   THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE
      UNDER CALIFORNIA LAW .......................................................................3

      A.    Trompeter Did Not Prove Oppression Or Surprise..............................3

            1.    Trompeter Did Not Sustain His Burden Of Proof .....................3

            2.    Trompeter's Arguments Are Wrong  And No Substitute For
                  Evidence ...................................................................................5

      B.    The Arbitration Agreement Is Not Substantively Unconscionable ......9

            1.    The Reservation Of Self-Help Remedies Is Not Shocking ......10

            2.    The Dollar Thresholds Of Three-Arbitrator Review Are
                  Not Unconscionable.................................................................14

            3.    The Injunction Threshold Is Not Unfair ..................................17

            4.    Requiring The "Appellant" To Advance Costs Is Not
                  Unfair ......................................................................................20

III.  IF UNCONSCIONABLE, THE THREE ARBITRATOR REVIEW
      PROVISION SHOULD BE SEVERED .......................................................22

IV.   FAA PREEMPTION LIMITS AND SHAPES THE
      UNCONSCIONABILITY DEFENSE .........................................................24

V.    CONCLUSION..........................................................................................27

# TABLE OF AUTHORITIES

Page(s)

*Cases*

*A & M Produce Co. v. FMC Corp.*,
  135 Cal.App.3d 473 (1982) ..........................................................19

*Armendariz v. Found. Health Psychcare Serv., Inc.*,
  24 Cal.4th 83 (2000) ...............................................................9, 19

*AT&T Mobility v. Concepcion*,
  __ U.S. __, 131 S.Ct. 1740 (2011) ..........................................*passim*

*Blair v. Scott Specialty Gases*,
  283 F.3d 595 (3rd Cir. 2002) ......................................................21

*Bradford v. Rockwell Semiconductor Sys. Inc.*,
  238 F.3d 549 (4th Cir. 2001) ..................................................21, 25

*Cable Connection, Inc. v. DIRECTV, Inc.*,
  44 Cal.4th 1334 (2008) ..........................................................16, 26

*Crippen v. Central Valley RV Outlet*,
  124 Cal.App.4th 1159 (2004) ................................................*passim*

*Doctor's Assoc., Inc. v. Casarotto*,
  517 U.S. 681 (1996)..........................................................7, 11, 12

*Faber v. Menard, Inc.*,
  367 F.3d 1048 (8th Cir. 2004) .....................................................21

*Flores v. Transamerica HomeFirst, Inc.*,
  93 Cal.App.4th 846 (2001) .........................................................11

*Graham v. Scissor-Tail, Inc.*,
  28 Cal.3d 807 (1981) ...............................................................9

*Green Tree Fin. Corp.-Ala. v. Randolph*,
  531 U.S. 79 (2000)...........................................................20, 22, 25

*Gutierrez v. Autowest, Inc.*,
  114 Cal.App.4th 77 (2003) .......................................................6, 21

*Harper v. Ultimo*,
  113 Cal. App.4th 1402 (2003) ......................................................7

# TABLE OF AUTHORITIES

Page(s)

*Htay Htay Chin v. Adv. Fresh Concepts Franchise Corp.*,
194 Cal. App.4th 704 (2011) .......................................................................3

*In re Bachman*, 2007 WL 4355620
(Bankr. D. Idaho 2007) ..............................................................................11

*Lair v. Bullock*,
697 F.3d 1200 (9th Cir. 2012) ...................................................................20

*Little v. Auto Stiegler Inc.*,
29 Cal.4th 1064 (2003) ........................................................................*passim*

*Livingston v. Assoc. Fin., Inc.*,
339 F.3d 553(7th Cir. 2003) ......................................................................21

*Madrid v. Perot Sys. Corp.*,
130 Cal.App.4th 440 (2005) ......................................................................18

*Morrison v. Circuit City Stores, Inc.*,
317 F.3d 646 (6th Cir. 2003) .....................................................................21

*Nelson v. Pearson Ford Co.*,
186 Cal.App.4th 983 (2010) ........................................................................6

*Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*,
935 F.2d 1019 (9th Cir. 1991) ...................................................................20

*Pantoja-Cahue v. Ford Motor Credit Co.*,
375 Ill.App.3d 49, 872 N.E.2d 1039 (2007) ..............................................10

*People v. Randono*,
32 Cal.App.3d 164 (1973) .........................................................................10

*Perry v. Thomas*,
482 U.S. 483 (1987) ...................................................................................24

*Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC*,
55 Cal.4th 223 (2012) .........................................................................*passim*

*Roman v. Superior Court*,
172 Cal.App.4th 1462 (2009) ....................................................................22

# TABLE OF AUTHORITIES

Page(s)

*Saika v. Gold,*
    49 Cal.App.4th 1074 (1996) .......................................................................16

*State v. Bhatt,*
    227 Ariz. 523, 260 P.3d 1088 (Ariz. App. 2011) .................................... 10-11

*Storek & Storek, Inc. v. Citicorp Real Estate, Inc.,*
    100 Cal.App.4th 44 (2002) ..........................................................................8

*Toyo Tire Holdings of Americas, Inc. v. Continental Tire N. Am., Inc.,*
    609 F.3d 975 (9th Cir. 2010) ......................................................................12

*24 Hour Fitness, Inc. v. Superior Court,*
    66 Cal.App.4th 1199 (1998) ........................................................................9

*Statutes*

United States Code
    Title 9, Section 2 .......................................................................................23

California Uniform Commercial Code
    Section 9609 .............................................................................................10

Civil Code
    Section 2981.9 ...........................................................................................4

Code of Civil Procedure
    Section 1281.8 ..........................................................................................12

Penal Code
    Section 154 ...............................................................................................10
    Section 632.7 ............................................................................................15

*Other Authorities*

Lawrence's Anderson on the UCC (3d ed. 2011)
    Volume 11, section 9-609:12 [Rev] ............................................................10

92 Ops. Atty. Gen. 97 (Dec. 31, 2009) .....................................................................6

Rubin, The Code, the Consumer, and the Institutional Structure
    of the Common Law, 75 Wash. U. L.Q. 11 (1997)........................................10

# I.

## INTRODUCTION

The order denying Ally Financial, Inc.'s ("Ally's") motion to compel arbitration should be reversed with instructions to grant the motion.

John Trompeter's car purchase contract contained an arbitration agreement to which the Federal Arbitration Act ("FAA") applies.  *See* Appellee's Brief, 10.

Trompeter sought to avoid arbitration solely on the ground the arbitration agreement was unconscionable.  He bore the burden of proving both procedural and substantive unconscionability.  *Pinnacle Museum Tower Ass'n v. Pinnacle Market Dev. (US), LLC,* 55 Cal.4th 223, 236, 247 (2012) ("*Pinnacle*").  He proved neither.

Trompeter introduced no evidence regarding the circumstances under which he signed the car purchase contract.  So, he could not and did not prove procedural unconscionability.  That failing alone was fatal to his effort to avoid arbitration.

Moreover, none of the four provisions of the arbitration agreement that he attacked were substantively unconscionable.  None of them is "so one-sided as to 'shock the conscience.' " *Id.* at 246.  The reservation of self-help remedies created no unfairness; it merely preserved the parties' existing rights and remedies.  The thresholds for three-arbitrator review were reasonably designed to reserve that more expensive and time-consuming procedure for outlier arbitration awards while leaving the great majority of single-arbitrator awards unreviewable.  Trompeter did not show

that he was likely to incur the cost of three-arbitrator review or that he was unable to afford that cost if required to advance it.

The district court also abused its discretion in failing to sever the three-arbitrator review provision after finding it unconscionable in several respects. After finding a similar internal arbitral review provision unconscionable, the California Supreme Court severed the review clause and enforced the remainder of the arbitration agreement. The district court erred in failing to follow the California Supreme Court's lead.

Finally, the FAA preempts the district court's application of California's unconscionability doctrine in three respects critical to this case. First, California law holds arbitration clauses unconscionable for provisions that pass muster in all other contracts. California law permits self-help remedies in all other contracts—even completely one-sided self-help remedies. So it may not forbid them only when the contract also contains an arbitration agreement. Second, the FAA imposes on a party complaining of arbitration costs a burden of proving that he or she is likely to incur those costs and that he or she cannot afford them. Trompeter showed neither. Third, the FAA allows parties discretion in designing arbitration procedures tailored to the types of disputes likely to arise in their contractual relationship. California may not employ unconscionability doctrine to restrict that discretion, particularly as it was reasonably exercised in this case.

For all of these reasons, the order denying Ally's motion to compel arbitration was erroneous. It should be reversed with directions to enter a new order compelling Trompeter to arbitrate his claim against Ally.

## II.

## THE ARBITRATION AGREEMENT IS NOT UNCONSCIONABLE UNDER CALIFORNIA LAW

**A.    Trompeter Did Not Prove Oppression Or Surprise**

**1.    Trompeter Did Not Sustain His Burden Of Proof**

"Since unconscionability is a contract defense, the party opposing arbitration bears the burden of proving that an arbitration provision is unenforceable on that ground." *Htay Htay Chin v. Adv. Fresh Concepts Franchise Corp*., 194 Cal. App.4th 704, 708 (2011) (citation omitted). "The party resisting arbitration bears the burden of proving unconscionability. Both procedural unconscionability and substantive unconscionability must be shown …." *Pinnacle,* 55 Cal.4th at 247 (citations omitted).

In this case, Trompeter introduced no evidence at all on the question of procedural unconscionability. His *only* evidentiary submissions in opposition to the motion to compel arbitration were a request for judicial notice of pleadings in another case and his attorney's declaration attaching a copy of Trompeter's contract and various items the attorney had found on the Internet. *See* E.R., 36-72, 124-125 #11, 12. Trompeter, himself, submitted no declaration. He presented no evidence regarding the circumstances surrounding his signing the contract, nor any evidence to

show inequality of bargaining power or presentation of the contract on a take-it-or-leave-it basis. Trompeter did not attest that he was not shown, did not read, or was surprised by the arbitration agreement in his contract.

> Plaintiff did not introduce or rely on any evidence of the circumstances surrounding the execution of the agreement, so he could not show inequality of bargaining power, lack of negotiation, or lack of meaningful choice based on those circumstances. He has not presented us with any reason to suppose substantially unequal bargaining power was inherent in his relationship with the seller.

*Crippen v. Central Valley RV Outlet*, 124 Cal.App.4th 1159, 1165 (2004).[1]

The mere fact that the contract was written on a standardized form is not sufficient to establish that it was an adhesion contract or procedurally unconscionable. *Id.* Trompeter submitted no evidence to show that he lacked the power to bargain for other terms. As Ally pointed out below, *see* E.R., 7:22-25, other car buyers sign purchase contracts lacking an arbitration provision. Trompeter submitted no evidence to show the dealer would not have used that form had he requested it. "In general, nothing prevents purchasers of used vehicles from bargaining with dealers, even

---

[1]   Contrary to Trompeter's argument, Appellee's Brief, 21-22, *Crippen* cannot be distinguished on the ground that it involved an arbitration agreement presented on a separate page which the buyer separately signed. *Crippen*'s broader holding that procedural unconscionability must be proven factually, not merely assumed, applies here even though the arbitration clause appears as part of a single document in compliance with Civil Code section 2981.9.

though dealers use form contracts, and nothing in the record shows that plaintiff could not bargain in this case."[2]  *Crippen*, 124 Cal.App.4th at 1166.

### 2. Trompeter's Arguments Are Wrong And No Substitute For Evidence

Having introduced no evidence of procedural unconscionability, Trompeter relies solely on argument.  Argument is no substitute for evidence.  Argument cannot satisfy Trompeter's burden of proof.  Moreover, Trompeter's arguments are all wrong.

Trompeter first argues that the Court should infer that he was not shown the back of the contract because his signature was not required on that side of the contract and because the contract supposedly was "a stack of carbon copies."  Appellee's Brief, 1, 6, 10-11, 15-16.  No such inference may be drawn.  It does not follow logically or as a matter of common practice.  Contracts often consist of many pages with a signature only on the last page.  One cannot infer from that fact that contracting parties do not read and are not shown any of terms on the preceding pages.

Trompeter submitted no evidence to show the contract was "a stack of carbon copies."[3]  But assuming it was, he has not shown any reason why he or the sales

---

[2]    The district court wrongly concluded that "[t]he standardized nature of the contract and its presentation on a 'take it or leave it' basis establish a limited degree of procedural unconscionability …."  E.R., 7:25-28.  *Crippen* holds that use of a standardized form does not establish procedural unconscionability.  There was no evidence that the dealer presented the contract to Trompeter on a take-it-or-leave-it basis.  Since Trompeter bore the burden of proof on this issue, the district court erred in assuming facts in his favor from a silent record.

person could not have turned one page or the entire stack over to read or show the terms on the reverse side.[4]

Trompeter cites *Gutierrez v. Autowest, Inc.*, 114 Cal.App.4th 77, 89 (2003), a case that mentions lack of a requirement that the consumer initial the arbitration clause as one bit of evidence, among much other evidence, that supported the trial court's finding of procedural unconscionability. Appellee's Brief, 17. Here, the district court made no such finding. And for good reason. There was no other evidence of procedural unconscionability here. California does not require any other type of clause to be initialed to avoid a finding of unconscionability. The FAA

---

(Fn. cont'd)

[3]    Trompeter claims the California Attorney General has "joined in the criticism" of the current car purchase form. Appellee's Brief, 16. Not so. The Attorney General only noted practical difficulties caused by the Rees-Levering Act's requirement of particular disclosures in set sequences, type sizes and locations when combined with that Act's insistence that all terms be contained in a single document. 92 Ops. Atty. Gen. 97 (Dec. 31, 2009). The Attorney General thought the way around the problem was to treat multiple pages as a single "document." But, since a contract violating Rees-Levering's single document rule is unenforceable, no dealer or finance company can risk finding out if courts will accept the Attorney General's proposal. *See Nelson v. Pearson Ford Co.,* 186 Cal.App.4th 983, 1006-07 (2010).

[4]    "Tellingly," Trompeter says, Ally offered no evidence to rebut the inference Trompeter was not shown the arbitration clause. Appellee's Brief, 16-17. He forgets that he, not Ally, bore the burden of proof on this issue. He introduced no evidence to prove procedural unconscionability. The inference on which he relies cannot reasonably be drawn. There was no need for Ally to offer evidence in rebuttal. Trompeter cannot satisfy his burden of proof by pointing to his opponent's lack of evidence.

preempts any state law that imposes that condition on arbitration clauses alone. *Doctor's Assoc., Inc. v. Casarotto*, 517 U.S. 681, 688 (1996).

Trompeter also argues that "a consumer, who is *unaware* of an oppressive contract term, has neither the opportunity nor reason to negotiate out the undisclosed term." Appellee's Brief, 18. That may be true, but there is no evidence Trompeter was "unaware" of the arbitration agreement. "Trompeter has not attested that he was actually surprised by the arbitration agreement."[5] E.R., 8:14-16.

Trompeter attempts to show procedural unconscionability based on the dealer's failure to give him copies of the arbitration rules when he signed the contract. Appellee's Brief, 1, 7-8, 12. Trompeter introduced no evidence to show that he was not given arbitration rules.[6] Moreover, as the district court noted, "it is clear from the agreement itself that the applicable arbitration rules were not determined at the time

---

[5]  Trompeter also claims that the ordinary rule binding a contracting party despite his failure to read the contract does not apply when there is overreaching or imposition or an adhesion contract. In those circumstances, Trompeter contends, a failure to read the contract helps establish actual surprise. Appellee's Brief, 20. Trompeter cannot claim the benefit of this purported rule because he presented no evidence of overreaching, imposition or adhesion contract nor any evidence he did not read the arbitration agreement nor, as the district court correctly found, any evidence that he was actually surprised by its terms.

[6]  Trompeter also did not show that the American Arbitration Association's rules or the rules of any other arbitration provider he might choose curtailed his rights or remedies in any unfair or surprising manner. *Cf. Harper v. Ultimo*, 113 Cal.App.4th 1402, 1406 (2003).

the contract was signed because Trompeter was given the option of choosing the arbitration provider he preferred."[7]  E.R., 8:26-9:2.

Finally, Trompeter argues there was procedural unconscionability because neither arbitration provider mentioned in the arbitration agreement would hear his claim.  Appellee's Brief, 1, 7, 11-12, 20-21.  While the National Arbitration Forum no longer hears consumer disputes, the American Arbitration Association would certainly hear Trompeter's claim.  His argument to the contrary is based on a misinterpretation of the AAA's Supplementary Procedures for Consumer-Related Disputes.[8]  Moreover, even if the those supplementary procedures did not apply to Trompeter's claim, the

---

[7]  Trompeter wrongly asserts that Ally retained "sole and unbridled choice of arbitrator" because the arbitration agreement says that the consumer may choose an arbitration organization other than the NAF or AAA "subject to our approval."  Appellee's Brief, 4, 21 n. 4.  The implied covenant of good faith limits Ally's discretion, requiring it to approve the consumer's choice unless it has objectively reasonable grounds for objecting.  *See Storek & Storek*, *Inc. v. Citicorp Real Estate*, *Inc.*, 100 Cal. App.4th 44, 59-61 (2002).

[8]  Under their section C-1, the Supplementary Procedures apply when the AAA or its rules "are used in an agreement between a consumer and a business where the business has a standardized, systematic application of arbitration clauses with customers and where the terms and conditions of the purchase of standardized, consumable goods or services are non-negotiable or primarily non-negotiable in most or all of its terms, conditions, features, or choices."  Trompeter argues that his agreement does not match that description because Ally "has steadfastly maintained" that the contract is not one of adhesion.  Appellee's Brief, 7.  Trompeter wrongly conflates "contract of adhesion" with standardized terms.  The two are not the same. *Crippen,* 124 Cal.App.4th at 1165-66.

AAA would still arbitrate the matter, applying its more general Commercial Dispute Resolution Procedures.

In short, Trompeter failed to satisfy his burden of proving procedural unconscionability. Since some showing of procedural unconscionability is required, the Court can and should reverse on this ground alone. It need not address any of the rest of the parties' arguments. *Crippen*, 124 Cal.App.4th at 1167.

## B.     The Arbitration Agreement Is Not Substantively Unconscionable

In opposing arbitration, Trompeter bore a heavy burden of showing that the arbitration agreement "shocks the judicial conscience" and thus is substantively unconscionable.

> A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be "so one-sided as to 'shock the conscience.' "

*Pinnacle*, 55 Cal.4th at 245, *quoting 24 Hour Fitness, Inc. v. Superior Court,* 66 Cal. App.4th 1199, 1213 (1998).

In applying this "shock the conscience" test, a court may not focus on each term individually but must consider them in context of the whole. *See* AOB, 15-16. A contract "will be denied enforcement if, ***considered in its context***, it is unduly oppressive or 'unconscionable." *Armendariz v. Found. Health Psychcare Serv., Inc*., 24 Cal.4th 83, 113 (2000) (emphasis added); *Graham v. Scissor-Tail, Inc*., 28 Cal.3d 807, 820 (1981).

So considered, the arbitration agreement in Trompeter's contract does not shock the conscience. It is not substantively unconscionable.

### 1.    The Reservation Of Self-Help Remedies Is Not Shocking

The arbitration agreement's reservation of self-help remedies is as even-handed in practice as it is in wording. It is not unfair, let alone so extreme as to shock the judicial conscience.

Car buyers as well as dealers and creditors may avail themselves of self-help remedies, contrary to Trompeter's, Appellee's Brief, 35, 37, and the district court's, E.R., 10:19-1122, assertions. The buyer can simply stop paying if the car is defective or he has some other claim against the dealer or creditor.[9] Though the creditor may try to invoke self-help repossession in response to the buyer's self-help halt in payments, the buyer can employ other self-help measures to thwart repossession.[10]

---

[9]    "Perhaps the most important [UCC section recognizing a self-help remedy] is section 2-717, which authorizes the buyer to deduct from future payments any damages attributable to the seller's breach. This is a valuable self-help remedy for consumers …." Rubin, The Code, the Consumer, and the Institutional Structure of the Common Law, 75 Wash. U. L.Q. 11, 36 (1997).

[10]    The buyer may simply park the car in a locked garage. A creditor is not permitted to repossess a car when it is so parked. *See* Cal. U. Com. Code, § 9609(b)(2); *Pantoja-Cahue v. Ford Motor Credit Co.,* 375 Ill.App.3d 49, 55-57, 872 N.E.2d 1039, 1044-1046 (2007); 11 Lawrence's Anderson on the UCC, § 9-609:12 [Rev] (3d ed. 2011). Contrary to Trompeter's argument, Appellee's Brief, 37, citing Pen. Code, § 154, it is no crime to lock one's car in one's own garage, even if it keeps the creditor from repossessing the car. Like other similar statutes banning the defrauding of creditors, Penal Code section 154 is aimed at completely different conduct. *See, e.g., People v. Randono*, 32 Cal.App.3d 164, 170-71, 179 (1973); *State v. Bhatt,* 227 Ariz. 523,

(Fn. cont'd)

The district court wrongly limited its search for buyers' self-help remedies to a single statute, the Song-Beverly Warranty Act, ignoring the Uniform Commercial Code's pertinent provisions. *See* E.R., 11:3-15.

Even if repossession were the only self-help remedy that a party to Trompeter's contract could realistically invoke,[11] the reservation of that remedy would not "shock the conscience." Many contracts grant only one party a self-help remedy. *See* AOB, 20-21. Deeds of trust are a prime example.[12] Absent an arbitration clause, no deed of trust or other contract has ever been held unconscionable because it conferred a self-help remedy on only one party. No different rule may be applied when the contract contains an arbitration clause. *AT&T Mobility, LLC v. Concepcion,* __ U.S. __, 131 S.Ct. 1740, 1747 (2011) ("*Concepcion*"); *Doctor's Assoc., Inc.*, 517 U.S. at 688.[13]

---

(Fn. cont'd)

526-27, 260 P.3d 1088, 1091-92 (Ariz. App. 2011); *In re Bachman*, 2007 WL 4355620, at *5-8 (Bankr. D. Idaho 2007).

[11]   As Trompeter, himself, points out, parties have many self-help remedies beyond those mentioned in the text. The creditor can dun the car buyer with collection letters and telephone calls. It can negatively report the buyer's credit. Appellee's Brief, 37-38. The buyer can likewise make negative reports on the dealer to or complain to the Better Business Bureau, Yelp*, and various government agencies.

[12]   Deeds of trust also illustrate the fact that one-sided self-help remedies are often granted creditors, who perform at the outset of the contract, to offset the greater risk default by a debtor, who has promised periodic payments over a long period.

[13]   *Flores v. Transamerica HomeFirst, Inc.,* 93 Cal.App.4th 846, 855 (2001), on which Trompeter relies, Appellee's Brief, 35-36, is easily distinguishable. *Flores* involved a reverse mortgage on which the debtor bore no personal liability, so the creditor's sole remedy was to foreclose its deed of trust. Its arbitration clause not only
(Fn. cont'd)

Trompeter complains that the arbitration agreement allows self-help repossession by the creditor but requires the car buyer to invoke arbitration to obtain injunctive relief.  Appellee's Brief, 35.  That disparity arises from the fundamental distinction between self-help and coercive relief, a distinction that the reservation does not create but simply preserves.

By definition, self-help remedies are actions parties may take on their own.  Injunctions are orders issued by a non-party adjudicator against an unwilling party.  Absent an arbitration clause, Ally could repossess Trompeter's car, but Trompeter would have to seek a judge's help to secure an injunction.  The arbitration agreement just substitutes an arbitrator in place of a judge.  This disparity between self-help and injunction is not unconscionable in a contract lacking an arbitration clause; adding an arbitration clause cannot make it unconscionable.[14]  *Concepcion*, 131 S.Ct. at 1747; *Doctor's Associates, Inc.*, 517 U.S. at 688.

---

(Fn. cont'd)

exempted self-help foreclosure from arbitration but also prohibited the arbitrator from granting any relief against foreclosure.  Here, repossession was not Ally's only remedy.  It could and did sue Trompeter for a deficiency.  Trompeter could compel arbitration of that dispute.  E.R., 55-62.  Also, the arbitration agreement in Trompeter's contract, does not limit the relief the arbitrator may award Trompeter.  The arbitrator may award relief against a wrongful repossession.

[14]  Contrary to Trompeter's unsupported assertion, Appellee's Brief, 36, nothing in his arbitration agreement prevented him from obtaining provisional relief pending arbitration from a court under Code of Civil Procedure section 1281.8 or under similar federal common law decisions.  *See Toyo Tire Holdings of Americas, Inc. v. Continental Tire N. Am., Inc.*, 609 F.3d 975, 980-82 (9th Cir. 2010).

Finally, *Pinnacle* completely undermines Trompeter's argument that the arbitration is unconscionable because it limits arbitration to claims likely to be brought only by one party.[15]  Appellee's Brief, 36.  In *Pinnacle*, the arbitration clause limited arbitration to construction disputes.  Only the homeowners' association and homeowners would initiate construction disputes against the developer; the developer would never bring such claims against homeowners.  Nevertheless, the California Supreme Court held the clause was not substantively unconscionable:

> [A]rbitration clauses may be limited to a specific subject or subjects and … are not required to "mandate the arbitration of all claims between [the parties] in order to avoid invalidation on grounds of unconscionability."  Here, the challenged clause is limited to construction disputes. To the extent Pinnacle wishes to allege the Association's comparative fault as an affirmative defense with respect to damages such issue would fall within the scope of [the arbitration clause].  Apart from that, the Association fails to identify any potential construction-related claim Pinnacle might assert against it that would not be subject to arbitration.  Accordingly, there appears no support for the Association's claims of unfairness and absence of mutuality.

*Pinnacle*, 55 Cal.4th at 248-49.

---

[15]   In fact, the arbitration clause in Trompeter's contract does not so limit arbitration. Trompeter is free to arbitrate any claim he has, including any claim relating to repossession of his car.

The reservation of self-help remedies simply preserves rights the parties would otherwise have if their disputes were adjudicated in court.  Preserving existing rights does not shock the conscience.  It is not substantively unconscionable.

### 2.    The Dollar Thresholds Of Three-Arbitrator Review Are Not Unconscionable

Contrary to Trompeter's, Appellee's Brief, 29-30, and the district court's, E.R., 11:23-12:11, assertions, the dollar thresholds for three-arbitrator review are not so one-sided as to shock the conscience.

In this particular transaction,[16] no party—Trompeter, dealer or creditor—is likely to obtain an arbitration award of more than $100,000.  Trompeter agreed to pay $35,000 over time for the $28,000 truck he purchased.  E.R., 78.  Trompeter would not likely recover more than what he agreed to pay for his truck in any suit against the dealer for product defects, improper repairs or wrongful sales practices.[17]  Similarly,

---

[16]  Focusing more broadly at the entire car sales market for which the Law Printing form was written leads to the same result.  New and used vehicles range in price from relatively cheap models, like the one Trompeter bought, to luxury cars, motor homes and recreational vehicles with sales prices approaching or even exceeding $100,000.  At the high end of the market, a creditor's collection action is as likely to result in an award exceeding $100,000 as is a buyer's claim for a defect or improper sales tactic.

[17]  In the district court and on appeal, "Trompeter contends that a defect in the vehicle could give rise to a claim exceeding $100,000."  E.R., 11:27-12:1, Appellee's Brief, 29-30.  In neither court, however, has Trompeter explained how he was likely to recover more than three times the sales price of the truck he bought.  The district court wrongly accepted Trompeter's unsupported assertion without analysis.  This Court should not do so.

the creditor would not likely recover more from Trompeter than he agreed to pay. *See* E.R., 12:1-2. To both claims, attorneys' fees might be added, but the claim by Trompeter or the creditor would likely not be "highly complex" or generate "disproportionately high attorneys' fees and costs." E.R., 12:7-11. So an award of $100,000 or more against any party would be highly unusual in any litigation arising from Trompeter's contract.[18]

Of course, that is just the point of the $0 and $100,000 thresholds for three-arbitrator review under this arbitration clause. Three-arbitrator review is expensive and time-consuming. It is reserved for only outlier or aberrational arbitration awards that due to their small or large size threaten more serious harm and are more likely incorrect. Most awards on most claims that any party to Trompeter's contract might bring would fall between those thresholds and so be resolved finally, swiftly and cheaply by a non-reviewable single arbitrator award. Only when the arbitration award becomes potentially devastating does accuracy outweigh cost containment and speed—only then is an appeal allowed.

---

[18]    Trompeter's actual claim of improperly recorded collection calls is also unlikely to result in an arbitration award exceeding $100,000. His maximum recovery is three times actual damages or $5,000 for an improperly recorded call. *See* Pen. Code, § 637.2. Trompeter has not alleged any actual damage or shown that enough calls were recorded to bring statutory damages within reach of the $100,000 threshold.

As the California Supreme Court observed in enforcing an agreement for judicial review of legal errors in an arbitration award:

> The benefits of enforcing agreements like the one before us are considerable, for both the parties and the courts. The development of alternative dispute resolution is advanced by enabling private parties to choose procedures with which they are comfortable. … The desire for the protection afforded by review for legal error has evidently developed from the experience of sophisticated parties in high stakes cases, where the arbitrators' awards deviated from the parties' expectations in startling ways.
>
> The judicial system reaps little benefit from forcing parties to choose between the risk of an erroneous arbitration award and the burden of litigating their dispute entirely in court.

*Cable Connection, Inc. v. DIRECTV, Inc.*, 44 Cal.4th 1334, 1353 (2008) (citations omitted.)

Moreover, unlike the clauses struck down in *Little v. Auto Stigler, Inc.*, 29 Cal.4th 1064, 1072-74 (2003) and *Saika v. Gold,* 49 Cal.App.4th 1074, 1076-77 (1996), on which Trompeter relies, Appellee's Brief, 27-29, this arbitration agreement has both a low—$0—and a high—$100,000—threshold for three-arbitrator review. Both Trompeter, Appellee's Brief, 30, and the district court, E.R., 13:11-19, wrongly shrug off this significant feature of Trompeter's arbitration agreement in a single unreasoned sentence.  It cannot, and certainly should not, be so easily disregarded. The $0 threshold responds precisely to the California Supreme Court's suggestion in

*Little* as to how review thresholds might be made even-handed in application. *Little*, 29 Cal.4th at 1073, quoted at AOB, 27.

Finally, Trompeter wrongly suggests that a truly bilateral clause would allow the buyer to appeal any award of less than $100,000. Appellee's Brief, 30. Such a provision would defeat the purpose of reserving three-arbitrator review for unusual, outlier awards. It would also unduly favor the buyer, allowing the buyer to appeal virtually every award while restricting the dealer or creditor to appeals only of highly unusual awards exceeding $100,000.

Trompeter has not met the heavy burden of showing that the $0 and $100,000 thresholds for three-arbitrator review so greatly favor the dealer or creditor as to shock the judicial conscience.

### 3. The Injunction Threshold Is Not Unfair

Allowing three-arbitrator review of awards of injunctive relief is not unconscionable. It is not one-sided. Even if it were, it would not render the arbitration agreement substantively unconscionable. Contrary to Trompeter's contention, three-arbitrator review does not delay an injunction's effectiveness.

There was no evidence before the district court to show that in bilateral arbitration injunctive relief is any more likely to be awarded to car buyers than to dealers or creditors. Both Trompeter, Appellee's Brief, 31-32, and the district court, E.R., 13:28-14:5, state that injunctions are often necessary to protect consumers or the

general public. The cases they cite, however, are either class actions or suits by public prosecutors.

In bilateral arbitration, injunctive relief against a dealer or creditor is rare because in most cases, the dealer's or creditor's performance was completed at the time the car was sold. An individual car buyer, therefore, is normally unable to show a likelihood of being affected in the future by any wrongful practice of the dealer or creditor. For that reason, in most cases, injunctive relief is unavailable to the individual car buyer.[19] *See Madrid v. Perot Sys. Corp.*, 130 Cal.App.4th 440, 464-65 (2005).

By contrast, a car buyer agrees to pay over time, and the buyer possesses the car. If self-help repossession cannot be effected, the creditor is likely to suffer continuing harm from the buyer's non-performance. In those circumstances, the creditor might well seek an injunction requiring the buyer to turn over possession of the car or to prevent the buyer from damaging or misusing it. There is no reason to suppose—and certainly no evidence to prove—that these injunctions in the creditor's favor would be any less frequent than injunctions in the buyer's favor in bilateral arbitration of single car disputes.

---

[19] This case is the exception proving the rule. Here, Trompeter complains of Ally's collection practices which, if unchanged, might affect him in the future. So injunctive relief might be recoverable in individual arbitration of Trompeter's claim.

Moreover, even if the injunction threshold for three-arbitrator review did tip in the dealer's or creditor's favor, it would not invalidate the arbitration agreement. "A contract term is not substantively unconscionable when it merely gives one side a greater benefit … ." *Pinnacle*, 55 Cal.4th at 246. There is an obvious business justification for allowing review of injunctive awards: Those awards may threaten the dealer's or creditor's continuing business operations. Patients seek second opinions before potentially life-threatening surgery. Not surprisingly, businesses seek the same protection against potentially business-threatening arbitration awards.

"[U]nconscionability turns not only on a one-sided result, but also on an absence of justification for it." *Armendariz*, 24 Cal.4th at 117-18, *quoting A&M Produce Co.*, 135 Cal.App.3d at 487 (internal quotes omitted). Here, a "reasonable justification" "based on 'business realities' " for any imbalance in the injunction threshold. *Id*. at 117. So, it is not unconscionable.

Finally, there is no support for Trompeter's or the district court's notion that three-arbitrator review will delay the effect of an injunction. *See* Appellee's Brief, 32-33; E.R., 14:6-18. As the district court recognized, prohibitory injunctions are not automatically stayed by an appeal in court. E.R., 13:15-17. There is no reason to think they would be treated any differently in the arbitration context. Trompeter cites

absolutely nothing—no case, no arbitration rule or procedure, no evidence, nothing—to support his contrary assertion.[20]  *See* Appellee's Brief, 32-33.

Courts may enforce interim arbitral awards of injunctive relief.  *Pacific Reinsurance Mgmt. Corp. v. Ohio Reinsurance Corp.*, 935 F.2d 1019, 1023 (9th Cir. 1991).  There is no reason a single arbitrator's award of injunctive relief could not be enforced pending review by a three-arbitrator panel.

### 4.    Requiring The "Appellant" To Advance Costs Is Not Unfair

Trompeter finally errs in claiming the three-arbitrator review provision unconscionable because the party seeking that review must advance the cost of that additional arbitral step.  Appellee's Brief, 34.

As pointed out in the opening brief, p. 31, "where, as here, a party seeks to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive, that party bears the burden of showing the likelihood of incurring such costs."  *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 92 (2000) ("*Randolph*").

---

[20]  As the district court pointed out, "[a] creditor could nevertheless seek a stay of an injunction pending appeal to a three-arbitrator panel."  E.R., 14:17-18.  That is true but irrelevant.  Were the dispute resolved in court rather than in arbitration, the creditor could seek a stay of any injunction from an appellate court.  *See, e.g., Lair v. Bullock*, 697 F.3d 1200 (9th Cir. 2012).  That relief is not unconscionable when awarded by this Court.  Why should it be when granted by a three-arbitrator panel?

Trompeter has not borne that burden here. The only evidence presented on this issue is the fact that the AAA charges $4,050 in fees for a three-arbitrator proceeding. Appellee's Brief, 34; E.R., 15:17-28. That fact, alone, is not enough to satisfy Trompeter's burden for two reasons.

First, Trompeter presented no evidence to show he could not afford those fees. *See Blair v. Scott Specialty Gases,* 283 F.3d 595, 608-10 (3rd Cir. 2002); *Bradford v. Rockwell Semiconductor Sys. Inc.,* 238 F.3d 549, 556 (4th Cir. 2001); *Morrison v. Circuit City Stores, Inc*., 317 F.3d 646, 664 (6th Cir. 2003); *Livingston v. Assoc. Fin., Inc*., 339 F.3d 553, 557 (7th Cir. 2003); *Faber v. Menard, Inc*., 367 F.3d 1048, 1054 (8th Cir. 2004).

Second, Trompeter cannot show he is likely to incur those costs. *Randolph* and the other just-cited cases concerned arbitration costs for first-round arbitration which any party seeking dispute resolution was certain to incur. Trompeter has no complaint about that part of the arbitration clause in his contract.[21] Instead, he feigns concern about costs on three-arbitrator review. As Trompeter is a plaintiff against whom no counterclaim has been stated, he can seek three-arbitrator review only if the arbitrator awards him $0. Trompeter has not shown that is a likely outcome. So he is not disadvantaged even if he could show he cannot afford three-arbitrator review.

---

[21]  *Gutierrez,* 114 Cal.App.4th at 91-92, on which the district court relied, E.R., 16:4-8, is distinguishable for this same reason. Like *Randolph*, *Gutierrez* involved initial arbitration costs, not expenses on internal arbitral review of a single-arbitrator award.

For both of these reasons, the asserted burden of paying costs of three-arbitrator review is even more speculative than the risk Randolph might incur initial arbitration fees she could not afford. *Randolph* holds that kind of speculative risk an insufficient basis for invalidating an arbitration clause. The Court should follow *Randolph* here.

## III.

### IF UNCONSCIONABLE, THE THREE ARBITRATOR REVIEW PROVISION SHOULD BE SEVERED

Even were the three-arbitrator review provision unconscionable, the district court abused its discretion in declining to sever that clause and enforce the remainder of the arbitration agreement. Under Civil Code section 1670.5, "the strong legislative and judicial preference is to sever the offending term and enforce the balance of the agreement …." *Roman v. Superior Court*, 172 Cal.App.4th 1462, 1477 (2009). Apart from the reservation of self-help remedies, all of the allegedly unconscionable provisions are contained in the two sentences dealing with three-arbitrator review.[22]

---

[22]  The two sentences are: "The arbitrator's award shall be final and binding on all parties, except that in the event the arbitrator's award for a party is $0 or against a party is in excess of $100,000, or includes an award of injunctive relief against a party, that party may request a new arbitration under the rules of the arbitration organization by a three-arbitrator panel. The appealing party requesting new arbitration shall be responsible for the filing fee and other arbitration costs subject to a final determination by the arbitrators of a fair apportionment of costs."

All can easily be excised simply by severing those two sentences and enforcing the rest of the arbitration agreement.[23]

The district court refused to sever the clause, saying that doing so might encourage "overreaching by creditors drafting consumer contracts" and that since the allegedly unconscionable terms "relate directly to circumstances in which the right of appeal attaches …, they are not collateral … and extirpating them by means of severance would amount to reformation of the agreement." E.R., 17:13-22.

*Little* shows that the district court misapplied California law in so holding. In *Little*, the California Supreme Court found that the dollar threshold for arbitral review rendered the arbitral review clause unconscionable. But it held that the arbitral review provision was severable and enforced the remainder of the agreement for straight-forward arbitration without review. In so holding, the California Supreme Court expressly rejected the notion in doing so it was reforming the parties' agreement. *Little*, 29 Cal.4th at 1075 ("no contract reformation is required-the offending provision can be severed and the rest of the arbitration agreement left intact").[24]

---

[23]  Contrary to Trompeter's assertion, Appellee's Brief, 39, 41, the arbitration agreement is not "permeated" with unconscionability. Instead, three of the four allegedly unconscionable provisions are found in the two sentences quoted in the preceding footnote and concern only the three-arbitrator review.

[24]  Contrary to Trompeter's assertion, Appellee's Brief, 40, the supposedly unconscionable provision requiring the "appellant" to advance fees can be cured simply by excising both sentences that mention three-arbitrator review. No reformation is required.

Also, as in *Little*, this clause is sufficiently different from those involved in prior cases—among other things, in having a $0 review threshold—"to preclude a determination that the provision was directly contrary to settled law and therefore inferentially drafted in bad faith." *Id.* at 1076.

In applying state law, a district court must follow state supreme court decisions that, like *Little*, are directly on point. The district court abused its discretion in failing to follow *Little*. If unconscionable, the three-arbitrator review provision can and should be severed, leaving the rest of the arbitration agreement to be enforced.

## IV.

## FAA PREEMPTION LIMITS AND SHAPES
## THE UNCONSCIONABILITY DEFENSE

While *Concepcion* did not eliminate unconscionability as a ground for avoiding arbitration agreements under 9 U.S.C. § 2, the decision shows clearly that the FAA significantly limits how that defense to arbitration may be employed.

First, the FAA does not allow unconscionability to be used in a manner that disfavors arbitration agreements as opposed to other types of contracts. "[A] court may not 'rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable ….' " *Concepcion*, 131 S.Ct. at 1747, *quoting Perry v. Thomas*, 482 U.S. 483, 493 n. 9 (1987).

For this reason, the reservation of self-help remedies cannot be held uncon-scionable. Under California law, a contract granting only one party a self-help

remedy is not unconscionable absent an arbitration clause. Deeds of trust allow the creditor only the self-help remedy of non-judicial foreclosure. Yet, deeds of trust are routinely enforced. They have never been held unconscionable. The fact that a contract, like Trompeter's, also contains an arbitration clause cannot, under the FAA, be a ground for holding unconscionable what otherwise would be a permissible one-sided self-help remedy.

Second, as already shown, pp. 20-21 above, under the FAA, "a party seek[ing] to invalidate an arbitration agreement on the ground that arbitration would be prohibitively expensive … bears the burden of showing the likelihood of incurring such costs." *Randolph*, 531 U.S. at 92. "The 'risk' that [the party opposing arbitration] will be saddled with prohibitive costs is too speculative to justify the invalidation of an arbitration agreement" under the FAA. *Id*. at 91. Further, the party opposing arbitration must show he cannot afford to pay the likely costs of arbitration. *Bradford,* 238 F.3d at 556.

Trompeter did not prove it was likely he would be forced to pay three-arbitrator review costs. He also failed to show he could not afford to pay those costs if called upon to do so. For both reasons, the FAA precludes Trompeter from invoking unconscionability to avoid the arbitration agreement's provision requiring the party seeking it to advance the cost of three-arbitrator review.

Third, the FAA "afford[s] parties discretion in designing arbitration processes … to allow for efficient, streamlined procedures tailored to the type of dispute." *Concepcion*, 131 S.Ct. at 1749. Unconscionability may not be used to force on parties "a State's mere preference for procedures that are incompatible with arbitration." *Id.* at 1748. Similarly, a state may not use unconscionability to deny parties the FAA-granted discretion to tailor procedures to the type of disputes they are likely to have.

> The [United States Supreme Court] has repeatedly ruled that the terms of the parties' agreement are controlling over considerations of expediency in the dispute resolution process. "After all, the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes, but to ensure that commercial arbitration agreements, like other contracts, ' "are enforced according to their terms," ' and according to the intentions of the parties." The court has viewed the federal policy served by the FAA as "at bottom a policy guaranteeing the enforcement of private contractual arrangements."

*Cable Connections, Inc.,* 44 Cal.4th at 1353 (citations omitted).

Here, the parties agreed on a three-arbitrator review procedure tailored to the type of disputes likely to arise under a car purchase contract. It allows review of extreme single-arbitrator awards of $0 or more than $100,000 or for injunctive relief. California's unconscionability doctrine may not be used to override the parties' choice of this procedure or the limits they set on its availability. The parties could reasonably choose to allow review only of outlier awards. The FAA does not permit California to second-guess that choice by holding it unconscionable.

In short, while it does not bar California from ever finding an arbitration clause unenforceable on the ground of unconscionability, the FAA *does* preempt Trompeter's and the district court's application of that doctrine to invalidate the arbitration clause in the Law Printing form car purchase contract.

## V.

## CONCLUSION

For the reasons set forth above, the Court should reverse the order denying Ally's motion to compel arbitration and remand with directions to enter a new order directing arbitration in accordance with the provisions of Trompeter's car purchase contract.

DATED:  December 17, 2012          SEVERSON & WERSON
                                    A Professional Corporation


                                    By:  _____
                                              /s/ *Jan T. Chilton*
                                              Jan T. Chilton

                                    Attorneys for Defendant-Appellant
                                    Ally Financial, Inc.

# CERTIFICATE OF COMPLIANCE
## With Type-Volume Limitation, Typeface Requirements, and Type Style Requirements
[Fed. R. App. P. 32(a)(7)(B)]

1.　　This brief complies with the type-volume limitation of Fed. R. App. Proc. 32(a)(7)(B), because this brief contains 6,663 words, excluding the parts of the brief exempted by Fed. R. App. Proc. 32(a)(7)(B)(iii).

2.　　This brief complies with the typeface requirements of Fed. R. App. Proc. 32(a)(5) and the type style requirements of Fed. R. App. Proc. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word for Windows 2010, in Times New Roman, 14 point type.

DATED:  December 17, 2012　　　SEVERSON & WERSON
　　　　　　　　　　　　　　　　A Professional Corporation


By:　　　　/s/ *Jan T. Chilton*
　　　　　　　Jan T. Chilton

Attorneys for Defendant-Appellant
Ally Financial, Inc.